Marcus L. Putnam et al., Respondents, *v.* Otsego Mutual Fire Insurance Company, Appellant.

Third Department, October 31, 1974.

*Rossi, Cohn & Durso, P. C. (Samuel A. Durso* of counsel), for appellant.

*Peter M. Mauhs* for respondents.

Staley, Jr., J. On July 1, 1970, plaintiffs' dairy barn was destroyed by fire, at which time the barn was covered by fire insurance in the total sum of $75,000. Defendant is one of four insurance companies that provided fire insurance coverage and the amount of its coverage was $15,000. Subsequent to the fire, three of the companies including defendant, retained James Van Deusen to represent them in the investigation and adjust-

ment of the loss. After negotiating with plaintiffs, a settlement was reached to pay them $67,000 as a compromise settlement, and the claim adjuster wrote them a confirming letter in which he forwarded proofs of loss to be signed and returned to him. The apportionment of defendant's share of the settlement amount was set forth in the proof of loss as $13,400.

Defendant contends that, by reason of a "Deferred Payment Clause", its obligation to pay under the terms of the policy is limited to 60% of the loss or $8,040.

On a prior appeal (*Putnam* v. *Otsego Mut. Fire Ins. Co.*, 41 A D 2d 981), judgment in favor of plaintiffs was reversed. The basic facts involved on this appeal are set forth in this court's memorandum decision on the prior appeal, in which this court held that, on the record then before it, there was a conflict concerning the intention of the parties with respect to the alleged compromise and settlement.

Subsequent to this court's reversal of the original judgment, plaintiffs moved for summary judgment based on new affidavits, and on the amplified record. Special Term granted summary judgment to plaintiffs, and denied defendant's cross motion for summary judgment.

On August 3, 1970, the claim adjuster reported to all the companies that an offer of $60,000 on the loss had been rejected, and recommended that the offer be increased to between $60,000 and $70,000. On August 5, 1970, defendant authorized the claim adjuster to settle at a figure approximately $67,000. On August 17, 1970, the claim adjuster advised plaintiffs that the compromise settlement figure of $67,000 had been accepted, and he forwarded to plaintiffs a proof of loss on the damages. On August 20, 1970, plaintiffs executed a proof of loss on defendant's policy setting forth the amount claimed as $13,400 which was the amount set forth in the claim adjuster's statement of apportionment as the amount payable by defendant.

When the proof of loss was received by defendant, the secretary of the company inserted the figure of $8,040 below the amount of $13,400 stated in the proof of loss and, on October 1, 1970, a check was issued payable to plaintiffs in the sum of $8,040, which check was returned to defendant. At no time during the course of the settlement negotiations, nor during the signing and returning of the proof of loss by plaintiffs to the claim adjuster, did the adjuster or anyone on behalf of defendant mention the "Deferred Payment Clause" of the policy to plaintiffs. All of the other companies on the loss paid the share assigned them as part of the compromise and settlement. Plain-

tiffs accepted these payments relying on the terms of the settlement which stated the total sum to be paid as $67,000.

The record shows that the insurance companies did not want to go through arbitration of the claim, since it might result in payment of the full amount of the coverage of $75,000. The offer of $67,000 was an offer to compromise and settle the entire controversy, with mutual concessions. The settlement was intended to be independent of the terms of all the fire insurance policies, including defendant's. When plaintiffs accepted the offer, the compromise agreement was made and binding on defendant to pay the sum of $13,400.

A settlement by compromise should be sustained without reference to the validity of the original claim of the parties. The effect of a compromise and settlement is to disclaim the obligation and the new promise substituted as the binding agreement between the parties. (*Gaffey* v. *St. Paul Fire & Marine Ins. Co.*, 221 N. Y. 113; *Post* v. *Thomas*, 212 N. Y. 264; *Goldbard* v. *Empire State Mut. Ins. Co.*, 5 A D 2d 230.)

Defendant further contends that interest was erroneously computed on the judgment at the rate of 7½% after September 1, 1972. CPLR 5004 provides that, effective September 1, 1972, interest on a judgment shall be at the rate of 6% per annum.

The judgment and order should be modified, on the law, by reducing the amount of interest computed on the judgment after September 1, 1972 at a rate of 6% per annum, and, as so modified, affirmed, with costs.

HERLIHY, P. J., SWEENEY, KANE and REYNOLDS, JJ., concur.

Judgment and order modified, on the law, by reducing the amount of interest computed on the judgment after September 1, 1972 at a rate of 6% per annum, and, as so modified, affirmed, with costs.