In re The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Debtors.

Jeffrey L. LIDDLE, Appellant,

v.

The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Appellees.

Nos. 90 Civ. 6954 (MP), 93 Civ. 5018 (MP).

Bankruptcy No. 90 B 10421 (FGC).

United States District Court, S.D. New York.

Oct. 19, 1993.

W. Dan Boone, Ethan A. Brecher, Liddle, O'Connor, Finkelstein & Robinson, New York City, for appellant Jeffrey L. Liddle.

Kenneth Fuchs, The DBL Liquidating Trust, New York City, for appellee DBL Liquidating Trust.

## OPINION

MILTON POLLACK, Senior District Judge.

Jeffrey L. Liddle, ("Appellant") an attorney, appeals from an order of the Bankruptcy Court, Conrad, B.J., denying his motion made after judgment dismissing his claim on the merits filed against the bankrupt estate, to amend his bankruptcy Proof of Claim two and a half years after the bar date for filing claims in which he asserted that his stock brokers had improperly liquidated his margin account and to substitute therefor a claim that, in settlement of the dispute about his stock claim, his law firm was promised $1 million worth of legal business and had received only a part thereof. The law firm was not named in the Proof of Claim or in the proceedings thereon. The central issue raised on appeal is whether in the exercise of discretion the bankruptcy judge reasonably denied such a proposed late amendment.

AFFIRMED.

## BACKGROUND

### A. Facts

Prior to October, 1987, Appellant, a practicing attorney, had maintained a personal margin securities account (the "Account") with Drexel. On October 19, 1987, otherwise known as "Black Monday," the Account purportedly fell short of the Federal Reserve Regulation T and New York Stock Exchange Rule 431 maintenance requirements. Appellant deposited funds into the Account on October 16, 21, and 23, but these funds failed to satisfy the margin maintenance requirements. On October 21, pursuant to the written margin agreement between the parties, Drexel sold securities in the Account to satisfy the remainder of Appellant's margin calls. Appellant contends that this liquidation was executed in violation of his customer agreement with

Drexel. (The Bankruptcy Judge found otherwise).

On October 28, 1987, Appellant purportedly met with Drexel General Counsel Paul Merolla and Drexel Vice President Bradley Razook to discuss how he could recoup his losses without litigation. Appellant's law firm was serving as Drexel's counsel in several employment and labor litigations at that time. He testified that at this meeting he and Merolla reached a settlement agreement under which Appellant would waive any claims for improper liquidation of his Account in exchange for Merolla and Drexel providing Appellant's law firm with additional legal work that would generate at least $1 million in fees (the "Agreement"). Under the agreement Appellant would receive litigation assignments defending Drexel against customers' securities claims in addition to the labor litigation Appellant already handled for Drexel. The following week Appellant's law firm received additional legal work from Drexel, in accordance with the purported Agreement. However, Appellant's firm did not receive any subsequent additional securities work from Drexel. Several weeks before Drexel filed its chapter 11 petition, Appellant was informed in a meeting with Drexel attorneys Karen Cullen and Joel Leifer that Merolla was not authorized to make such an Agreement to refer additional legal work to Appellant's law firm.

### B. Prior Proceedings

On November 15, 1990, Appellant filed proof of claim number 9932 in the Drexel bankruptcy for the alleged "[l]oss caused to the claimant by defendant in October and November 1987 from disorderly liquidation of account without appropriate margin calls and failure to communicate with claimant or return phone calls." Appellant's proof of claim did not assert or rely on the Agreement but only the alleged wrongful liquidation of the Account.

Drexel objected to the claim and moved to expunge it. The Bankruptcy Court held an evidentiary hearing on Drexel's objection on April 24, 1993.[1]

At the evidentiary hearing, Appellant in the course of his testimony related a meeting with Drexel employees with whom he discussed liquidation of his margin account. Appellant stated that Mr. Merolla had promised to furnish his law firm with legal business in settlement of his complaint about his margin account. Because of the informality with which the bankruptcy Judge was hearing this class of claims (see fn. 1), Drexel's counsel did not object to this self-evidently irrelevant recital in the course of the trial of the stock liquidation claim. Appellant then called Mr. Merolla to the stand as his witness but Merolla stated that he did not recall entering into any agreement with Appellant.

At the conclusion of the April 24, 1993 hearing, Judge Conrad issued the following ruling from the bench:

> This is an objection to claim in reference to Mr. Jeffrey L. Liddle which arises under this Court's small claims procedure....
>
> Mr. Liddle, I am going to—you have the burden of proof once the debtor objects to your claim, then you have the burden to prove whether your claim is valid.
>
> I am going to deny your objection to claim and sustain the Debtor's objection for two reasons.
>
> First of all, on strictly procedural grounds and on the margin account, it's clear from looking at the statement of account here that you did not meet the minimum requirements for the call on a margin account.
>
> It appears to me, and this is a difficult thing in reference to the credibility of the witnesses, first of all, whether you received the call or not, Drexel is not re-

---

1. The evidentiary hearing was an informal small claims court proceeding which was instituted by the Bankruptcy Court several months earlier to deal with earlier disputed claims of less than $100,000 and later disputed claims of less than $1 million. The Court intended this small claims procedure to be "as informal as possible," and told counsel "this is somewhat of an informal procedure in order to keep the cost to all the litigants down.... So technical objections—I am not really interested in hearing them because I will just deny them anyway."

quired to give you notice under the agreement which you signed under Paragraph 7, and I understand your statement, you know, in the small print you have no right to change that, but margin accounts being risky, the broker/dealer in these cases when they maintain them has to have the absolute right to do that.

It appears, though, that you received some notice because the dovetailing of the payments that you made, the funds received in reference to the calls would appear to me that you received some calls or a margin account, however you may not have understood the fact that if you put $10,000 in or you sell certain types of stock, that doesn't—you only get a certain release of the margin, in this case it's clearly thirty percent and you missed the margin on at least two occasions. However, it appears that you also did not understand the difference between a margin account and an option account, which somewhat concerns me.

In that you may not have understood what was going on and even though everybody recognizes that Black Monday or Tuesday was a pretty bad day for everybody, in point of fact it looks like there was an effort to notify you.

However, if I am wrong on that procedural background, I think I will not be wrong on what appears to be a dispute between the credibility of the witnesses here.

Mr. Merolla has no recollection, really, of what he said to you and about this conversation, so I find that your version of the story is probably the most credible.

I think that you went there in a good faith effort in order to resolve something which you perceive is a problem, you had a client account, you represented a client and you didn't want to sue them.

I don't know whether Mr. Merolla had authority to settle anything, this Court's experience with Mr. Merolla on other matters has told this Court that he's a very, very detailed man, but I don't think he remembers this conversation.

What I think happened at that lunch, and both of you were there, is that you entered into a settlement of your claim against Drexel and that settlement in this Court's view then vitiates whatever claim you had on your margin account.

Then ultimately what happened, it appears that Drexel breached their agreement with you by not sending the additional clients, because I think everybody understands the difference between retail customer claims and employment claims.

However, the difficulty you have here is your Proof of Claim is only for margin account which you should have done and it is now too late to do so, you should have filed a Proof of Claim for breach of contract, which you did not.

You waived your claim, you settled it, you agreed upon an exchange of fees and unfortunately the bar date has passed and you cannot file a new Proof of Claim.

So the objection to your claim is sustained and Mr. Fuchs you may submit the Order and we will also so order the transcript and indicate that the findings of fact and conclusions of law are pursuant to Bankruptcy Rule of Procedure 7052. . . .

On May 14, 1993, the Bankruptcy Court signed an "Order Disallowing and Expunging Proof of Claim Number 9932," in which it:

ORDERED that the Objection is sustained and that proof of claim number 9932 be and hereby is disallowed in all respects pursuant to section 502 of the Bankruptcy Code; and it is hereby further

ORDERED that the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rule 7052 are as set forth on pages 71 through 75 (annexed hereto) of the Transcript of Hearing of April 24, 1993; and it is hereby further

ORDERED that the Transcript of Hearing of April 24, 1993 is "So Ordered."

On May 19, 1993, Appellant submitted to the Bankruptcy Court a notice of motion, affidavit, and memorandum of law requesting leave of court to "amend Claimant's proof of claim to conform to the evidence at trial and the Court's finding that the debtors are liable to Claimant for breach of contract," pursuant to Bankruptcy Rule 7015 and to reflect this modification in an amended judgment pursuant to Bankruptcy Rule 9023.

By Order dated May 27, 1993, the Bankruptcy Court denied the motion to amend the proof of claim and judgment without a hearing:

> Pursuant to Rules 15 and 59 of the Federal Rules of Civil Procedure, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 7015 and 9023, respectively, Motion to Amend Proof of Claim 9932 of Jeffrey L. Liddle to Conform the Evidence at Trial and to Amend Judgment has been made to this Court. The Court, having reviewed the motion and supporting papers, and having found that claimant's motion is untimely and that claimant's remedy is an appeal, and having found no mistake of either law or fact,
>
> It is therefore
>
> ORDERED, that the Motion to Amend is hereby denied.

On June 3, 1993, Appellant filed his notice of appeal from the Bankruptcy Court's denial of his motion to amend his proof of claim and the adverse judgment thereon.

## ANALYSIS

### A. Standard of Review

■ An order denying a motion to amend a proof of claim and to amend a judgment is reviewed under an abuse of discretion standard. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *United States v. Cer-*

*tain Real Property and Premises Known as 890 Noyac Road,* 945 F.2d 1252, 1257 (2d Cir.1991); *Childs v. Drexel Burnham Lambert Group Inc.,* 146 B.R. 84, 87 (S.D.N.Y.1992). A reviewing District Court will not set aside Bankruptcy Court's findings of fact unless they are clearly erroneous. Bankruptcy Rule 8013.

### B. Amendment of a Proof of Claim

At the threshold, Drexel questions the applicability of Fed.R.Civ.P. 15 to bankruptcy proofs of claim. The rule provides that:

> (b) **Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings [and] may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues ... when the presentation of the merits of the action will be subserved thereby....

### 1. Whether Rule 15 Applies

Bankruptcy Rule 7015 provides that "Rule 15 F.R.Civ.P. applies in adversary proceedings." Drexel contends that Rule 7015 does not apply in this case because its objection to Liddle's claim was not an "adversary proceeding: Drexel's objection was heard by the Bankruptcy Court under Rule 3007, titled "Objections to Claims,"[2] rather Rule Bankruptcy 7001, which sets out the scope of adversary proceedings. Bankruptcy Rule 9014 governs "contested bankruptcy matters" such as Objections to Claims under Rule 3007. Under Rule 9014, Rule 7015 does not apply to non-adversary proceedings like the present case, unless directed by the court. Specifically, Rule 9014 provides:

> possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for the kind of relief specified in Rule 7001, it becomes an adversary proceeding.

---

**2.** Specifically, Rule 3007 states:

An objection to the allowance of a claim shall be in writing and filed with the court. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in

In a contested matter in a case under the Code not otherwise governed by these rules [e.g. Rule 7001], relief shall be requested by motion and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.... The motion shall be served in the manner provided for service of a summons and complaint by rule 7004, and **unless the court otherwise directs,** the following rules shall apply: 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7062, 7064, 7069, 7071. **The court may at any time in a particular matter direct that one or more of the other rule in Part VII shall apply**.... (emphasis added).

Drexel maintains that Rule 15(b) does not apply to the present case because Rule 7015 is not listed among the applicable rules provided above in Rule 9014, and the Bankruptcy Court did not direct Rule 7015 to apply.

Appellant concedes that the evidentiary hearing was an objection to claims proceedings governed by Rule 9014. However, Appellant contends that in its order denying Appellant's motion to amend, the Bankruptcy Court directed that Rule 7015 applied to this case. In the Court's "Order Denying Motion to Amend" of May 27, 1993, Bankruptcy Judge Conrad stated:

Pursuant to Rules 15 and 59 of the Federal Rules of Civil Procedure, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure Rules 7015 and 9023, respectively, Motion to Amend Proof of Claim 9932 of Jeffrey L. Liddle to Conform to the Evidence at Trial and to Amend Judgment has been made to this Court....

Appellant maintains that this sentence constitutes the Bankruptcy Court's express direction under Rule 9014 that Rule 7015 applies to this case. Drexel contends that after the hearing had already been held and judgment directed, this ruling did not provide Drexel with sufficient notice from the Court that it would apply Rule 7015 to this case.

█ Regardless of whether the Bankruptcy Court adopted Federal Rule of Civil Procedure Rule 15 (via bankruptcy Rule 7015) in this case, several courts have held that the analysis for amendment of claims in bankruptcy is identical to the analysis required by Rule 15. As recently stated by this Court:

"While Federal Rule 15 which governs amendment to pleadings is not directly applicable to claims proceedings under Bankruptcy Rule 9014, the determination regarding amendment parallels considerations under that rule. The critical determination is whether the opposing party will be unduly prejudiced by the amendment."

*Integrated Resources, Inc. v. Ameritrust Company National Assoc., et al.,* 157 B.R. 66, 70 (Bankr.S.D.N.Y.1993) (quoting *In re White Motor Corp.,* 59 B.R. 286, 289 (Bankr.N.D.Oh.1986); *see also In re Neshaminy Office Building Assoc.,* 63 B.R. 998, 999 (Bankr.E.D.Pa.1986) ("Even in the absence of such an order [incorporating Rule 15], the legal principles underlying Bankruptcy Rule 7015 or Fed.R.Civ.P. 15 afford counsel to our decision."); *In re McLean Indus., Inc.,* 121 B.R. 704, 710 (Bankr.S.D.N.Y.1990) ("The test under Rule 15 is basically the same as that developed in the case law for amending claims in bankruptcy ..."). Thus, even if the Court's Order Denying Motion to Amend did not adopt Rule 15, these precedents indicate that the analysis for amendment of a proof of claim is identical to that of Rule 15 regardless of whether the rule is expressly adopted by the Bankruptcy Court. Thus, this Opinion will rely on Rule 15 case law to analyze this appeal.

### 2. Rule 15 Standard for Allowing Amendment of Claim

█ "Amendments [to pleadings] are favored as a general matter, ... in order to facilitate a proper decision on the merits." *McAllister Bros., Inc. v. Ocean Marine Indemnity Co.,* 742 F.Supp. 70, 80 (S.D.N.Y.1990). As stated by the Supreme Court:

In the absence of any apparent or declared reason—such as undue delay, bad faith or **dilatory** motive on the part of

the movant, repeated failure to cure **deficiencies** by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, **futility of the amendment,** etc.—the leave [to amend] should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. at 230 (emphasis supplied). The Second Circuit Court of Appeals has stated that "although leave to replead is in the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991); *see also McAllister Bros.,* 742 F.Supp. at 80 ("Unless there is good reason to deny a motion to amend, failure to grant it is an abuse of discretion.").

The Bankruptcy Judge correctly found **no merit** in Appellant's claim of improper liquidation of his margin account. Pursuant to Paragraph 7 of the signed customer agreement between Appellant and Drexel, Drexel was not required to give Appellant notice before liquidating his holdings for margin insufficiency. As the Bankruptcy Court stated, Drexel had the absolute right to liquidate assets to preserve the proper margin. The Second Circuit has sanctioned liquidation without notice provisions in broker-customer contracts. *See Modern Settings, Inc. v. Prudential Bache Securities, Inc.,* 936 F.2d 640, 644 (2d Cir.1991) (approving liquidation of margin account without notice pursuant to broker-customer agreement).

After disposing of the brokerage claim on its merits adversely to Appellant the bankruptcy Judge addressed the purported commitment to forward legal business to Appellant's law firm. He characterized this as a dispute of credibility of witnesses and stated, "Mr. Merolla has no recollection really, of what he said about this conversation, so I find that your [appellant's] version of the story is probably the most credible". The Judge added, "I don't know whether Mr. Merolla had authority to settle anything ... he's a very detailed man, but I don't think he remembers this conversation." The Judge then added that it was too late to file a new Proof of Claim because the bar date had passed: the Proof of Claim was only for margin account, and to assert otherwise "you should have filed a Proof of Claim for breach of contract, which you did not.... the bar date has passed and you cannot file a new Proof of Claim."

The Supreme Court has stated that "futility of amendment" is an appropriate basis for denying a motion to amend. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230. *See also Albany Ins. Co. v. Esses,* 831 F.2d 41, 45 (2d Cir.1987), *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) ("the district court may deny leave to replead if the proposed amendments would be futile."). In this case, allowing Appellant to amend his proof of claim to state an entirely new, not merely an insufficiently pleaded claim, viz:, a breach of a contract of settlement, would have been futile. The purported contract claim was barred by the bankruptcy bar date and moreover is unenforceable because it is not in writing.[3]

New York state law would view the purported settlement agreement as an "executory accord." Under New York General Obligations Law, an executory accord is not enforceable unless it is in writing. N.Y.Gen.Oblig.Law § 15–501 (McKinney 1989).[4] An executory agreement "is mere-

---

**3.** The purported agreement is not void for lack of consideration even though the underlying claim was meritless. The surrender of even a doubtful claim provides adequate consideration for an agreement, and "[a] settlement by compromise should be sustained without reference to the validity of the original claim of the parties." *Putnam v. Otsego Mut. Fire Ins. Co.,* 45 A.D.2d 556, 557, 360 N.Y.S.2d 331 (3d Dept. 1974).

**4.** That Section defines executory accord as an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge [of a present] ... cause of action, and a promise express or implied to render such performance in satisfaction or discharge of such ... cause of action....

That section further states that executory accords will be enforced "provided the promise of the party against whom it is sought to enforce

ly an agreement to accept performance, in futuro, as future satisfaction of the old agreement or dispute." *Goldbard v. Empire State Mut. Life Ins. Co.*, 5 A.D.2d 230, 233 (1st Dept.1958). In the case of an executory accord, the plaintiff can sue for performance either under the underlying claim or under the executory accord. *Goldbard* held that a purported oral settlement of an insurance dispute was an executory accord because "It is generally more reasonable to suppose that he bound himself to surrender his old rights only when the new contract of accord was performed." *Id.* at 235. *See also Langlois v. Langlois*, 5 A.D.2d 75, 77, 169 N.Y.S.2d 170 (3d Dept.1957) (stating "there is a strong line of authority in this State to the effect that an agreement settling a tort claim made prior to suit or made out of court during the pendency of an action is presumed to be a mere executory accord"); *Bruce Realty Co. of Florida v. Berger*, 327 F.Supp. 507, 509 (S.D.N.Y.1971) (the New York statute requiring executory accords to be written "has been construed by New York courts to mean that an oral settlement cannot be enforced"). By basing his 1990 Proof of Claim on a breach of the customer-broker relationship in respect of the margin selling in his account, an attempted amendment to assert a breach of a settlement contract presented only an executory accord, and any contrary finding would be clearly erroneous. The bankruptcy Judge did not consider the executory accord nature of the claim Appellant attempted to present. A claim under a purported settlement agreement not memorialized in a writing is unenforceable.

Were the issue of the amendment now presented to rest on whether there was an agreement—which it does not—a finding of the sufficiency of the proof thereof would have to be set aside in the circumstances of this case as clearly erroneous. Merolla and Liddle—two attorneys—are said to have committed Drexel to provide $1 million in legal business for appellant's law firm. There is not a scintilla of corroboration or authority of Merolla for such a commit-

the accord is in writing and signed by such

ment. Even if a writing were not required to enforce such a commitment in exchange for a rejected breach of a stockbrokerage obligation, the lack of writing, especially where the law firm on whose behalf it purports to have been made is not even a party to the Proof of Claim filed, casts more than mere doubt on its existence. Drexel denied any such commitment before the bankruptcy bar date; Appellant, with knowledge of Drexel's repudiation of the purported agreement, elected in 1990 not to claim its existence and breach; his firm made no assertion of any such claim made on its behalf; and Liddle filed only his own personal securities claim against the Drexel estate. The law firm which was to receive the $1 million of new legal business was not a party to Liddle's Proof of Claim, and in 1993 it was too late to add them to the 1990 claim. A finding to the contrary would be clear error and insupportable against the estate.

The issue whether Drexel impliedly consented to trial of the alleged commitment by failing to bar Liddle's gratuitous recital thereof is moot because an amendment to insert such a claim in the Proof of Claim on trial would be untenable at best; it would only pose an unenforceable executory accord. Under all the facts and circumstances the bankruptcy Judge clearly had and properly exercised discretion to deny an amendment of the Proof of Claim.

█ In determining whether a motion to conform the Proof of Claim against the estate under Rule 15(b), the most important question is

> whether the new issues were tried by the parties' express or implied consent and whether the parties "would be prejudiced by the implied amendment," i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be tried on a different theory.

*Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1017 (2d Cir.1989) quoting *Browning Debenture Holders' Cmte. v. Dasa Corp.*, 560 F.2d

party...."

1078, 1086 (2d Cir.1977) (upholding denial of leave to amend pleadings to conform to proof at trial where plaintiff had known for three years the grounds for the claim sought to be asserted by amendment). Drexel would have suffered unfair prejudice if Appellant had been allowed at this late date to convert his Proof of Claim to the claim attempted.

## CONCLUSION

The bankruptcy court had discretion, and the denial of an amendment under all the facts and circumstances of this case was a proper exercise of discretion. The Order and Judgment of the Bankruptcy Court are affirmed, with costs.